# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. ROGERS, Minor.

UNPUBLISHED
March 27, 2018

No. 339430
Oakland Circuit Court
Family Division
LC No. 2015-830277-NA

Before: K. F. KELLY, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. REASONABLE REUNIFICATION EFFORTS

Respondent first argues that petitioner, the Department of Health and Human Services (the Department), failed to make reasonable efforts to reunify her and the child. We disagree.

To preserve a claim that the Department failed to make reasonable efforts to reunify the child and family, a respondent must "object or indicate that the services provided . . . were somehow inadequate[.]" *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). " 'The time for asserting the need for accommodation in services is when the court adopts a service plan . . . .' " *Id*., quoting *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000) (ellipsis in original). Respondent did not object at any time to the reunification services provided. Therefore, this issue is unpreserved. We review unpreserved issues for plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

Absent aggravating circumstances, "[b]efore a court may enter an order terminating parental rights, Michigan's Probate Code, MCL 710.21 *et seq*., requires a finding that the Department . . . has made reasonable efforts at family reunification." *In re Hicks*, 500 Mich 79, 83; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. At each review hearing, the court is required to consider compliance with the case service plan regarding services provided and whether the parent has benefited from those services. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). The

respondent must establish that he or she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

In this case, the parent-agency agreement required respondent to obtain mental health treatment, obtain housing, obtain employment or legal income, attend parenting classes, and participate in parenting time with the child. In the order terminating respondent's parental rights, the trial court found that "[r]easonable efforts were made to preserve and unify the family to make it possible for the child(ren) to safety return to the child(ren)'s home."

With regard to mental health treatment, the foster care worker assigned to the case from April 2015 to June 2016 testified that when the case was initiated, respondent had an ongoing case with Easter Seals and wanted to continue her treatment there, so no referrals were required. Respondent received a psychiatric evaluation near the end of June 2015 and began receiving therapy and medication management. Although respondent suggests that the Department should have referred her for additional mental health services, the record establishes that respondent did well when she complied with her treatment at Easter Seals from approximately July 2015 to December 2015. Respondent only began having issues and stopped visiting the child when she stopped her treatment in December 2015. The services provided by Easter Seals were sufficient, but respondent failed in her responsibility to participate in those services. See *In re Frey*, 297 Mich App at 248. Thus, respondent cannot establish that she would have fared better if additional services had been offered. See *In re Fried*, 266 Mich App at 543.

Respondent also argues that the Department should have referred her for domestic violence counseling. Contrary to respondent's assertion, domestic violence counseling was not part of the parent-agency agreement because domestic violence was not a concern at the time the agreement was entered. The Department, however, became aware of domestic violence issues with the child's father in approximately October 2015, but did not refer respondent for domestic violence services. At one point, the Department did request that the Easter Seals therapist address respondent's history of domestic violence, but the foster care worker testified that she did not refer respondent for domestic violence services. According to the foster care worker, however, a person must refer herself to Haven (a shelter and counseling facility for domestic violence victims) and she discussed respondent receiving comprehensive care through Easter Seals. After the filing of the supplemental petition, respondent sought domestic violence treatment on her own accord. The fact that respondent independently sought domestic violence treatment "in no way compels the conclusion that petitioner's efforts toward reunification were not reasonable, and, more to the point, does not suggest that respondent would have fared better if the worker had offered those additional services to [her]." *Id.* The record establishes that, even after having participated in domestic violence counseling, respondent still had contact with the child's father.

With regard to housing, there is no evidence that the Department attempted to assist respondent in obtaining adequate housing. The initial plan, however, was for respondent to return to her mother's home, where the child had been placed. Respondent was close to returning in December 2015. Until that time, respondent stayed with friends and never indicated a need for assistance in finding housing. At the December 8, 2015 review hearing, respondent had housing, but it had not yet been assessed. At the time of the hearing on the statutory grounds, respondent had suitable housing with a friend. At the best-interest hearing, respondent

remained in the same residence, but expressed a desire to move, resulting in the trial court finding that she lacked adequate housing. Again, however, she never indicated a need for assistance from the Department. Respondent cannot establish that she would have fared better if additional services had been provided. See *In re Fried*, 266 Mich App at 543.

With regard to employment or income, there is similarly no evidence that the Department provided any assistance to respondent. Respondent, however, applied for and obtained Supplemental Security Income benefits during the pendency of the case, and also held various part-time jobs. Thus, again, there was no need for assistance from the Department and, moreover, lack of income was not a basis for the termination of respondent's parental rights. Thus, respondent cannot establish that she would have fared better if additional services had been provided. See *In re Fried*, 266 Mich App at 543.

With regard to parenting classes, respondent was referred to and completed parenting classes. As respondent notes, the Department believed that she benefited from those classes at the time she completed them in December 2015. In March and April 2016, however, she attended several parenting time sessions at which she was inappropriate, suggesting that she had not benefitted from the classes. She was also not in compliance with her mental health treatment at that time. Again, while respondent sought out additional parenting classes on her own, this does not establish that the Department's efforts were not reasonable. See *In re Fried*, 266 Mich App at 543.

Finally, the Department made reasonable efforts to assist respondent with attending parenting time and doing so was not an issue when respondent was also in compliance with her mental health treatment. When she ceased her mental health treatment, she also stopped visiting the child. Although she claimed that she lacked transportation, she admitted having bus passes. She claimed that the bus passes were stolen, but she never contacted the foster care worker to attempt to obtain new passes. During January to March 2016, when respondent did not visit, the foster care worker repeatedly attempted to contact respondent, but was unsuccessful. The foster care worker had also told respondent on more than one occasion that the visits could be moved to the agency if respondent preferred.

In sum, the record shows that the Department made reasonable efforts to reunify respondent with her child. Therefore, we reject this claim, as there was no plain error affecting respondent's substantial rights.

## II. STATUTORY GROUNDS FOR TERMINATION AND BEST INTERESTS

Next, respondent argues that the trial court clearly erred in finding that the statutory grounds for termination set forth in MCL 712A.19b(3)(c)(*i*), (g), and (j) were established by clear and convincing evidence. Respondent also contends that the trial court clearly erred in finding that termination of her parental rights was in the child's best interests. We disagree with both arguments.

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to

terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The trial court found that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j). Those provisions authorize termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3).]

With regard to MCL 712A.19b(3)(c)(*i*), the initial dispositional order was entered on July 27, 2015, and the supplemental petition seeking termination was filed on April 5, 2016, more than eight months later. As the trial court found, the conditions that led to the adjudication involved respondent's mental health and her concomitant failure to care for the child following his birth. After an initial period of compliance with her treatment plan, respondent stopped taking her medication in October 2015 and stopped services at Easter Seals in approximately December 2015. Respondent reengaged in services at Easter Seals after the supplemental petition was filed, but still failed to attend all therapy sessions. Moreover, throughout the case, she failed to recognize that it was her mental health issues that brought the child into care. At the

time of the termination hearing, respondent did not believe that she needed medication, and did not believe that all of her treatment was necessary. Although she improved her compliance with her treatment after the filing of the supplemental petition, she had a history of poor follow-up care. Respondent unreasonably believed that the court would only have to monitor her case for an additional six months, at which time the child would be two years old. Considering respondent's history of falling out of compliance, termination was not premature,[1] and the trial court did not clearly err in finding that respondent's mental health issues remained a barrier to reunification and were not reasonably likely to be rectified within a reasonable time considering the child's age.

The trial court found that respondent's unresolved mental health issues also prevented her from providing proper care and custody and presented an ongoing risk to the child, justifying termination under MCL 712A.19b(3)(g) and (j). These findings also are not clearly erroneous. The record establishes that when respondent was not taking her medication or attending mental health services, she was unable to properly care for the child and was harmful to the child. This happened when the child was born and again from approximately January to April of 2016, when she failed to visit or had inappropriate visits. As previously discussed, the trial court did not clearly err in finding that respondent's mental health issues had not been resolved, despite evidence that she was stable at the time of the termination hearing. Accordingly, the trial court did not clearly err in finding that respondent failed to provide proper care or custody, that there was no reasonable expectation that she would be able to do so within a reasonable time given the child's age, and that there was a reasonable likelihood that the child would be harmed if returned to respondent's home.

With respect to the child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court found that the Department showed by a preponderance of the evidence that termination was in the child's best interests because (1) respondent still exhibited poor insight regarding the circumstances that brought the child into care, (2) respondent's ongoing relationship with the child's father interfered with her ability to properly care for the child, (3)

---

[1] Respondent complains that she was given less than a year to show that she could provide proper care and custody for her child, and that she was not provided with any services during the 14-month termination proceedings. There was no evidence, however, that respondent was denied any services, other than parenting time, during the proceedings. Moreover, the trial court considered evidence from after the filing of the supplemental petition as it related to the likelihood of respondent correcting the barriers to reunification.

respondent failed to sufficiently address her mental health issues, and (4) respondent did not continue to have stable, suitable housing. The trial court also found that the child was thriving in his placement and observed that a court-appointed psychologist had recommended that it would not be in the child's best interests to return him to respondent's care in the foreseeable future. These findings are not clearly erroneous. At the best-interest hearing, respondent still failed to recognize that her mental health issues had brought the child into care. Despite respondent's assertions to the contrary, there was evidence that respondent continued to maintain a relationship with the child's father, who had abused respondent in the past. Indeed, respondent admitted having contact with him days before the best-interest hearing. Although respondent denied initiating the contact, her statement that she did not understand how her contact with the child's father was "relevant" to the child demonstrated that she did not understand how that contact would be harmful to the child. Additionally, although respondent continued to reside in the apartment that the trial court had previously found to be suitable, she informed the court that she wanted to move out and find a place by herself. Although there was evidence showing respondent's partial compliance with the treatment plan and that respondent and the child were bonded in the past, respondent's failure to rectify her mental health issues continued to present a risk of harm to the child. The psychologist recommended that the child not return to respondent's care in the foreseeable future because she "lacks insight into her poor decision making and judgment, has unstable mental health and lacks the proper finances and transportation to care for [the child.]" Finally, the child's foster father testified that the child was doing well in care. The trial court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ William B. Murphy
/s/ Michael J. Riordan

-6-